**NEW BEDFORD FISHERMEN'S WELFARE FUND, by Its Trustees, and New Bedford Fishermen's Pension Trust, by Its Trustees, Plaintiffs,**

v.

**SEAFARERS INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC, GULF, LAKES AND INLAND WATERS DISTRICT, AFL–CIO, Defendant.**

Civ. A. No. 85–3165–Mc.

United States District Court, D. Massachusetts.

June 10, 1986.

Philip N. Beauregard, Fairhaven, Mass., David Barnet, Barnet & Barnet, P.C., William M. Straus, Lang, Straus, Xifaras & Bullard, P.A., New Bedford, Mass., for plaintiffs.

Richard Gabriele, Schulman & Altman, New York City, and Paul F. Kelly, Segal, Roitman & Coleman, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER.

McNAUGHT, District Judge.

This matter comes before the Court on the defendant's motion for partial summary judgment. The defendant moves for an order granting summary judgment in its favor as to the fifth and sixth counterclaims in its first amended answer. The parties have favored the Court with memoranda, affidavits and oral argument. A bit of background is helpful in understanding the real issue which must be decided: who is the proper union party to the New Bedford Fishermen's Welfare Fund and Pension Trust?

From 1950 to 1978, the New Bedford Fishermen's Association (which was commonly known as "Fishermen's Union") was the collective bargaining representative of the New Bedford Fishermen. The Fishermen's Union back in 1958 established the New Bedford Fishermen's Welfare Fund pursuant to Section 302 of the LMRA, 29 U.S.C. § 186 in order to provide health and welfare benefits to the New Bedford fishermen.

The instrument establishing the Welfare Fund requires that the employers of unionized fishermen contribute to the Fund a certain percentage of the gross value of their vessel's catch. The percentages are determined through collective bargaining procedures. The founding instrument also specifies that the Welfare Fund is to be administered by six trustees, three of whom are appointed by the contributing employers and three of whom are appointed by the "Union".

The New Bedford Fishermen's Pension Trust was established in 1963 to provide pension benefits for the fishermen and is managed by the same trustees who manage the Welfare Fund. The assets of

the Pension Trust are derived in the same manner as those of the Welfare Fund.

As originally adopted, the Welfare Fund and the Pension Trust's (hereinafter referred to as the "Funds") governing documents provided that the term "Union", when that term is used, refers to the Fishermen's Union. In 1978, the Fishermen's Union merged with Teamsters Local 59 and the governing documents of Funds were amended to provide that the term "Union" thereafter refers to Local 59, not to the Fishermen's Union. In 1979, three new union trustees designated by Local 59 were installed.

In 1985, the Seafarers International Union ("SIU"), after winning NLRB certification elections, became the exclusive collective bargaining representative of the vast majority of New Bedford fishermen. When Local 59's collective bargaining agreements expired in March of 1985, the SIU began negotiating for new collective bargaining agreements with New Bedford boat owners. Although the SIU now has agreements with a majority of the vessels which had been represented by Local 59, those signed vessels do not constitute a majority of contributors in terms of income. Still unsigned are the Seafood Producers Association of New Bedford, Inc. ("SPA") and Boatowners United, Inc. ("Boatowners United"), two trade organizations which represent many of the New Bedford boat owners who collectively constitute the more substantial contributors to the Funds. (The plaintiffs' counsel has stated in open court that it will continue collecting from the SPA and Boatowners United members contributions in the amounts specified under the expired Local 59 agreements.)

In July of 1985, before any new bargaining agreements had been reached, the SIU requested that the Funds' trustees transfer that portion of the assets which had been contributed by boat owners on behalf of employees who are now represented by the SIU into a fund that would be established once new bargaining agreements were reached. The SIU has since changed its position. It no longer plans to institute a new fund. Those collective bargaining agreements which have been reached call for a continuation of the plaintiff Funds. The SIU now asks only that it be the union party which designates the three "employee" trustees to the Funds.

The trustees filed the instant action for a declaration of their statutory duties. SIU counterclaimed alleging breach of fiduciary duty and violations of section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The SIU has moved for summary judgment as to counterclaims five and six, in which SIU claims that the Funds' governing documents are structurally defective under 29 U.S.C. § 186(c)(5) because they fail to provide that the right to appoint the three "employee" trustees belongs to the employees' *current* collective bargaining agent.

The defendant SIU argues that the current bargaining representative's preclusion from participation in control of the Funds violates section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5)'s requirement that "... employees and employers [must be] equally represented in the administration of ..." the trust fund. Inadequate representation, argues the defendant, constitutes a structural defect in a section 302(c)(5) trust fund. *Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421, 424 n. 4 (1st Cir.1968). The SIU maintains that Local 59 cannot adequately represent the fishermen's interest in the administration of the Funds because Local 59 is no longer the fishermen's exclusive bargaining agent. It argues that once a union is supplanted by another, the displaced union has no right to be involved in the administration of a trust fund benefiting the bargaining unit employees.

The SIU argues emphatically that case law requires the Court to reform the Funds' governing documents by substituting the current exclusive bargaining representative, the SIU, for the former bargaining representative, Local 59, as the union party entitled to participate in the Funds' administration. I find the case law cited by the defendant to fall short of compelling.

In *United Brick and Clayworkers v. International Union of District 50,* 439 F.2d 311 (8th Cir.1971), a case upon which the defendant relies principally, the court was confronted with facts quite different from those presented in the case at bar. There, the bargaining agreement between the defendant union and the employer had expired. After losing exclusive bargaining status, the defendant attempted to dissolve the pension fund by contracting with the fund's sole contributing employer to terminate the pension plan. The plaintiff, the successor union, then entered into a new bargaining agreement with the employer which called for the continuation of the pension fund. The plaintiff requested that the defendant union cooperate in substituting the plaintiff in the pension plan. The defendant refused, taking the position that the plan was already terminated. The District Court set aside the attempted dissolution of the plan and ordered that the plaintiff union be substituted for the defendant union in the pension plan. In affirming the decision of the District Court, the Eighth Circuit Court of Appeals made clear its reasons: any attempt by an employer to alter the wages and terms of employment, such as changes in pension benefits, without bargaining with the employees' current exclusive bargaining agent is invalid. *Id.,* at 313, 314.

In the instant case, unlike in *United Brick, supra,* there has been no attempted dissolution nor any dealings whatsoever between the predecessor union, Local 59, and the employers to change employee pension benefits. Nor have new collective bargaining agreements been reached between the successor union, the SIU, and every employer who contributes to the multi-employer Funds. Indeed, the SIU has yet to contract with a very substantial contributor, the SPA. The facts presented do not warrant court intervention.

From the facts presented, it cannot be said that the Funds are maintained in violation of the "equal representation" requirement of section 302(c)(5) of the LMRA. The Local 59 trustees have a fiduciary duty to act solely for the benefit of the employ-ees. The plaintiffs state that they have complied fully with ERISA reporting and notice requirements. As an additional safeguard, there exists an agreement between the parties which permits an "observer" of the SIU to monitor all meetings held by the Funds. Thus, it appears that the current trustees have adequately represented the New Bedford fishermen's interests in the Funds' administration and will continue to do so while the SIU continues negotiating new collective bargaining agreements with the remaining unsigned boat owners.

For the foregoing reasons, the defendant's motion for partial summary judgment is hereby denied.